

**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. 14-50134 |
| Plaintiff-Appellee, | D.C. No. 2:13-cr-00222-AG-1 |
| v. | |
| JULIAN LOPEZ ARQUELAO, AKA Julian Lopez Hernandez, AKA Arguelao Julian Lopez, AKA Julian Hernandez Lopez, AKA Adolfo Hernandez Sanchez, | MEMORANDUM* |
| Defendant-Appellant. | |

Appeal from the United States District Court
for the Central District of California
Andrew J. Guilford, District Judge, Presiding

Argued and Submitted May 7, 2015
Pasadena, California

Before: LIPEZ**, WARDLAW, and MURGUIA, Circuit Judges.

---

\* This disposition is not appropriate for publication and is not precedent except as provided by 9th Cir. R. 36-3.

\*\* The Honorable Kermit V. Lipez, of the United States Court of Appeals for the First Circuit, sitting by designation.

Julian Lopez Arquelao ("Lopez") appeals his conviction and sentence for being a previously deported alien found in the United States without permission in violation of 8 U.S.C. §§ 1326(a), (b)(2). We affirm.

1. The district court properly denied Lopez's motion pursuant to 8 U.S.C. § 1326(d) to dismiss the indictment because his 2005 removal order was not "fundamentally unfair." *United States* v. *Ubaldo-Figueroa*, 364 F.3d 1042, 1048 (9th Cir. 2004). Even assuming an Immigration Judge ("IJ") has a duty to inform a non-citizen of his apparent eligibility for a U visa, Lopez was not eligible for U visa interim relief in 2005 because he was an aggravated felon due to his assault with a firearm conviction in 2004.

Furthermore, Lopez was deportable as charged. Although his 2000 removal proceedings were terminated because the Immigration and Naturalization Service ("INS") ordered Lopez to remain in the United States so he could cooperate with the Rampart Scandal investigation, that order did not permit Lopez to remain in the United States indefinitely. Instead, the INS order stated that Lopez "will immediat[e]ly surrender for removal upon demand." The INS requested Lopez's removal in 2005, and, at his immigration hearing, Lopez admitted that he "did not have legal permission to come" to the United States. Therefore, Lopez was present

in the United States without being admitted or paroled and was deportable as charged on this ground. *See* 8 U.S.C. § 1182(a)(6)(A)(i).

2. The district court properly considered and weighed the relevant 18 U.S.C. § 3553(a) factors at sentencing. Although the applicable Guidelines range was 70 to 87 months, the district court applied a two-level downward variance to reach its 57-month sentence in part due to Lopez's mitigating factors, specifically his difficult past and his wrongful conviction as part of the Rampart Scandal. *See United States* v. *Carty*, 520 F.3d 984, 996 (9th Cir. 2008) (noting that "the sentencing judge set forth enough to satisfy [us] that he has considered the parties' arguments and has a reasoned basis for exercising his own legal decisionmaking authority" (alteration in original) (internal quotation marks omitted)).

The district court also expressly considered whether its sentence would introduce an unwarranted sentencing disparity. *See* 18 U.S.C. § 3553(a)(6). The disparity between Lopez's sentence and the average illegal reentry sentence of 19

3

months[1] was not unwarranted, due to a 16-level enhancement for Lopez's crime of violence conviction and his criminal history category of V. *Cf. United States* v. *Marcial-Santiago*, 447 F.3d 715, 719 (9th Cir. 2006) (holding that "disparity between Appellants' sentences and the sentences imposed on similarly-situated defendants . . . is not unwarranted" because disparity was justified by statute).

3. The below-Guidelines sentence was not substantively unreasonable. Although Lopez has extensive familial ties inside the United States, he has a significant criminal history, which consists of five felony convictions, including three offenses committed less than ten years from the time of the instant offense. The sentence was reasonable in light of Lopez's extensive criminal history.

Finally, the 16-level enhancement was not unreasonable as applied to Lopez. The enhancement was warranted because Lopez's 2004 assault with a firearm conviction was a crime of violence that receives criminal history points. *See* U.S.S.G. § 2L1.2(b)(1)(A)(ii). His reliance on *United States* v. *Amezcua-Vasquez*, 567 F.3d 1050 (9th Cir. 2009), is misplaced because the defendant's crime of

---

[1] The United States Sentencing Commission found that for the fiscal year 2012, the "average sentence length for illegal reentry offenders was 19 months." United States Sentencing Commission, Quick Facts: Illegal Reentry Offenses, *available at* http://www.ussc.gov/sites/default/files/pdf/research-and-publications/quick-facts/Quick_Facts_Illegal_Reentry.pdf. However, according to the same report, only 24.8% of those offenders received a 16-level enhancement and only 8.1% were in Category V. *Id.*

4

violence conviction in that case took place 25 years prior to his unlawful entry, and he had a "record of relative harmlessness to others for the past twenty years." *Id.* at 1058.

**AFFIRMED.**